IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFONSO CORDOVA, SR., individually and as
personal representative of the estate of his
son, ALFONSO CORDOVA, JR.,
EUFELIA CORDOVA, DONNA CORDOVA,
ANNA MARIE CORDOVA, individually and as
next friend of her minor son, Joseph Alfonso Roybal,
GRACE CORDOVA, individually and as next friend
of her minor child Timothy Ray Cordova,
EMILY MARTINEZ, CLARIZA CORDOVA
and JULIA SALAZAR,

       Plaintiffs,

vs.                                                                                                  No. CIV 05-563 JB/LFG

THE UNITED STATES OF AMERICA and
THE NEW MEXICO HEART INSTITUTE, P.A., a
New Mexico corporation,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Sanctions and to Compel Answer, filed April 5, 2006 (Doc. 72). The Court held a hearing on this motion on May 23, 2006. The primary issues are: (i) whether the Court should sanction the deponent's counsel for inappropriate behavior during a deposition; (ii) whether the Court should compel Dr. Beverly Demchuk, the deponent, to answer certain questions that Plaintiff Alfonso Cordova, Sr. attempted to ask during her deposition; and (iii) whether the Court should instruct the jury that it should assume that Dr. Demchuk answered certain questions in the affirmative. Because Dr. Demchuk's lawyer's conduct is inconsistent with the Federal Rules of Civil Procedure, the Court will grant the motion in part and compel Dr. Demchuk to answer certain questions, but will deny the motion to the extent that

it seeks the Court to instruct the jury on certain issues.

## PROCEDURAL BACKGROUND

On May 23, 2005, the Plaintiffs filed suit against the Defendants under the Federal Tort Claims Act and the Federally Supported Health Centers Assistance Act for allegedly failing to properly care for Alfonso Cordova, Jr. while he was treated for an aortic aneurysm. See Complaint ¶¶ 1, 12-23, at 1, 3-6, filed May 23, 2005 (Doc. 1). According to the Plaintiffs, a New Mexico Heart Institute employee had measured the size of the aneurysm by ultrasound as 6.5cm on August 25, 2003. See Motion for Sanctions at 1. The Plaintiffs allege that, subsequently, Dr. Demchuk had measured the size of the aneurysm as 7.5cm by cardiac catheterization. See id. The Plaintiffs assert that Cordova died on September 8, 2003, when the aneurysm ruptured, the night before he was scheduled to see a cardiac surgeon from the Heart Institute. See id. at 1-2.

The Plaintiffs move for sanctions against Dr. Demchuk's lawyer for his conduct during Dr. Demchuk's deposition on February 6, 2006. See id. at 2. Specifically, the Plaintiffs contend that Dr. Demchuk's lawyer made argumentative and suggestive objections, engaged in off-the-record conferences with Dr. Demchuk during pending questions, and instructed or influenced Dr. Demchuk not to answer some of the questions, thereby obstructing the deposition. See id. at 2-22. The Plaintiffs ask the Court to award sanctions personally against Dr. Demchuk's lawyer of $1,000.00 for the expenses that the Plaintiffs incurred in making the motion. See id. at 19. The Plaintiffs also ask that the Court compel Dr. Demchuk to answer certain questions at a new deposition. See id. at 19-20. Further, the Plaintiffs request that the Court instruct the jury, when this case goes to trial, that Dr. Demchuk did not answer three questions and that it should treat those questions as if they had been answered affirmatively; the Plaintiffs request that the Court compel Dr. Demchuk to answer a

fourth question. See id. at 20-21.

The Defendants deny that Dr. Demchuk's lawyer or the attorney for Defendant New Mexico Heart Institute, William Madison, engaged in this conduct and blame the Plaintiffs' attorney for asking questions that elicited repeated objections from Dr. Demchuk's lawyer and the Defendants. See Defendants' Response at 3-20, filed April 24, 2006 (Doc. 78). The Defendants argue that it would be unfair to the Heart Institute to be punished, through the Plaintiffs' proposed jury instructions, for the actions of a non-party's attorney. See id. at 10-20. In his brief, Dr. Demchuk's lawyer also denies that his conduct violated the Federal Rules of Civil Procedure. See Demchuk Response at 7-10, filed April 24, 2006 (Doc. 79).

**RULE 30(d)**

Rule 30(d)(1) of the Federal Rules of Civil Procedure states that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner." In applying this rule, courts have found that frequent and suggestive objections by opposing counsel can run afoul of rule 30(d)(1). See Damaj v. Farmers Ins. Co., Inc., 164 F.R.D. 559, 560 (N.D. Okla. 1995)(McCarthy, J.). "If counsel objects to a question at deposition based on the form of the question, counsel may briefly explain the objection if the deposing counsel asks for an explanation and counsel does not in the explanation suggest an answer to the deponent." Orr v. City of Albuquerque, CIV No. 01-1365 JP/RHS, Memorandum Opinion and Order at 5 (D.N.M July 24, 2003)(Parker, J.)(citing Quantachrome Corp. v. Micromeritics Instrument Corp., 189 F.R.D. 697, 701 n. 4 (S.D. Fla. 1999)(Gonzalez, J.)).

Courts have also interpreted this rule to mean that it is improper for counsel "to act as an intermediary, interpreting questions, deciding which questions the witness should answer." Plaisted

v. Geisinger Medical Center, 210 F.R.D. 527, 534 (M.D. Pa. 2002)(McClure, J.)(citations and internal quotations omitted). This construction means that, if a witness is confused about a question, or if the question seems awkward or vague, the witness may ask deposing counsel to clarify the question; securing clarification is not the job of the witness' counsel. See Quantachrome Corp. v. Micrometritics Instrument Corp., 189 F.R.D. at 700 (noting that the witnesses were scientists and engineers who were "[s]urely . . . intelligent enough to know when they do not understand a question"). "Counsel violates Rule 30(d)(1) when counsel's objections result in an incomplete answer or in the witness's adoption of counsel's statement. . . ." Orr v. City of Albuquerque, Memorandum Opinion and Order at 4 (quoting Plaisted v. Geisinger Medical Center, 210 F.R.D. at 534).

## ANALYSIS

At the parties' request, the Court has reviewed, not only the highlighted and underlined portions of the deposition, and the excerpts of the deposition – multiple times – but the Court has also reviewed the transcript of the complete deposition. During Dr. Demchuk's deposition, Dr. Demchuk's lawyer violated rule 30(d) of the Federal Rules of Civil Procedure and caused the witness to answer questions incompletely or not at all. Dr. Demchuk's lawyer violated the rules in three ways. First, he made suggestive or "coaching" or "speaking" objections throughout the deposition. Second, he engaged in off-the-record conferences with the witness during pending questions. Finally, Dr. Demchuk's lawyer instructed the witness not to answer a question when the rules did not allow such an instruction, and also influenced the witness to refuse to answer certain questions. Dr. Demchuk's lawyer's conduct during the deposition frustrated the fair examination of Dr. Demchuk and, under the rules, is subject to sanction.

**I.   DR. DEMCHUK'S LAWYER VIOLATED RULE 30(d)(1) BY MAKING FREQUENT ARGUMENTATIVE AND SUGGESTIVE OBJECTIONS.**

During Dr. Demchuk's deposition, Dr. Demchuk's lawyer made numerous lengthy objections that also suggested an answer.  See, e.g., Deposition of Beverly Demchuk at 47:20-48:5, 50:20-51:1, 51:22-52:5, 87:13-25 (taken February 6, 2006)(hereinafter "Dr. Demchuk Depo."). Dr. Demchuk's lawyer's objections were frequently much longer than necessary to convey the gist of his points.  See id. at 47:20-48:5 (eighty-two words); id. at 50:20-21 (fifty-nine words); id. at 52:22-52:5 (eighty-two words); id. at 67:7-17 (ninety-one words); id. at 68:19-69:6 (110 words).  For example:

> [Dr. Demchuk's lawyer]:  And I'm going to join in the objection. Dan, to the extent that Dr. Demchuk is here as a fact witness today, not as an expert witness – and at this point in time, you are posing what is essentially a hypothetical, because she's already told you that the correlation between the echocardiogram and her cath measurements cannot be compared in that fashion.  So you're essentially asking her to assume that there was a 10-millimeter enlargement, and I don't think that's been established.

Id. at 47:20-48:5.

> [Dr. Demchuk's lawyer]: Dan, here's the problem we've got.  You are, at this point in time, clearly asking Dr. Demchuk to give standard-of-care testimony about the care that she provided to Mr. Cordova.  She's here as a fact witness.  As you know from previous cases that we've had, the risk is, if she gives standard-of-care testimony, it is conceivable that she becomes the standard-of-care expert by which the defendant is going to have to defend this case, and that's not appropriate.  So to the extent that I feel that you're asking her direct standard-of-care questions about the care she provided to Mr. Cordova, I'm going to have to instruct her not to answer.

Id. at 68:19-69:6.

The deposition's transcript shows that her lawyer's coaching began to have an effect on Dr. Demchuk, who soon refused to answer questions because she was there as a "fact witness" who was not to give opinions on "standard of care": "A.  I'm here as a fact witness.  I'm not here to give opinions on – as far as I understand, opinions on standard of care.  So that seems to be in the latter

category, there." Id. at 74:13-16. As this activity continued, it became impossible to know if Dr. Demchuk's answers emanated from her own line of reasoning or whether she adopted Dr. Demchuk's lawyer's reasoning from listening to his objections.

Furthermore, the Plaintiffs were entitled to question Dr. Demchuk about her knowledge of the dangers associated with an expanding aneurysm. Her knowledge of such a growth is related to her assessment of Cordova Jr.'s condition and her subsequent treatment, or lack of treatment, of that condition. Though there may be some other explanation for the appearance of the growth that discovery may reveal, the Plaintiffs are entitled to question Dr. Demchuk on her knowledge of the dangers associated with such a growth. The questions relate to Dr. Demchuk's knowledge of the facts of this case and do not attempt to elicit expert testimony from Dr. Demchuk. Because Dr. Demchuk's lawyer's objections were not concise and suggested answers to Dr. Demchuk, they violated rule 30(d)(1)'s command that any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner.

## II. DR. DEMCHUK'S LAWYER IMPROPERLY ENGAGED IN OFF-THE-RECORD CONFERENCES DURING THE DEPOSITION WHILE A QUESTION WAS PENDING.

Three times during the deposition, Dr. Demchuk's lawyer and Dr. Demchuk engaged in off-the-record conferences during the deposition while a question was pending. See id. at 52:6-18, 64:22-65:4, 68:8-69:19. Several courts have disapproved of such conferences, because they interfere with the deposing attorney's pursuit of the truth and allow the witness's attorney to suggest answers to the witness. See Plaisted v. Geisinger Med. Ctr., 210 F.R.D. at 533; In re Stratosphere Corp. Sec. Litig., 182 F.R.D. 614, 621 (D. Nev. 1998)(Hunt, M.J.); Hall v. Clifton Precision, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993)(Gawthrop, J.). The transcript reflects that the conferences interrupted the

flow of the deposition, because after two conferences Dr. Demchuk or her counsel asked to have the question repeated and refused to answer the Plaintiffs' question following another conference:

> Q. (By Mr. Shapiro) Will you please answer my question?
>
> A. May I just confer with my counsel here?
>
> MR. SHAPIRO: Sure.
>
> [Recess taken from 11:34 AM to 11:35 AM, and testimony continued as follows:]
>
> [Dr. Demchuk's lawyer]: Is there a question out at this point in time, Dan, or do you want her to try to add to what she's already told you?
>
> MR. SHAPIRO: There's a question out that hasn't been answered, and I'm happy to repeat it.
>
> [Dr. Demchuk's lawyer]: Okay. Why don't you do that, just so we're clear what it is.
>
> * * *
>
> Q. So is it your testimony that if they asked you could they go to the hospital now, your testimony is you probably would have said, "Yes, you can"?
>
> A. Can I go off the record again here with my counsel?
>
> MR. SHAPIRO: Yes.
>
> [Discussion off the record.]
>
> A. Sorry, can you repeat the question?
>
> * * *
>
> Q. And if the family had asked or Mr. Cordova had asked to be admitted, and you said that's not necessary, that would have been a violation of your training, right?
>
> MR. MADISON: Object to the form of the question.
>
> [Dr. Demchuk's lawyer]: Join.

[Discussion off the record.]

MR. SHAPIRO: Let the record reflect that the witness is talking now to her counsel off the record with a question pending.

[Dr. Demchuk's lawyer]: Dan, here's the problem we've got. You are, at this point in time, clearly asking Dr. Demchuk to give standard-of-care testimony about the care that she provided to Mr. Cordova. She's here as a fact witness. As you know from previous cases that we've had, the risk is, if she gives standard-of-care testimony, it is conceivable that she becomes the standard-of-care expert by which the defendant is going to have to defend this case, and that's not appropriate. So to the extent that I feel that you're asking her direct standard-of-care questions about the care she provided to Mr. Cordova, I'm going to have to instruct her not to answer.

MR. SHAPIRO: Well, you give your instructions as you want to give them, and we'll see what the judge has to say about it.

Q. (By Mr. Shapiro) I have a question that's pending that you've spoken to your lawyer for the last three minutes about; is that correct, Dr. Demchuk?

A. You recall that I've mentioned several times that I don't recall having conversations.

Q. I understand that. My question to you – you have been talking to your lawyer about your answer to my pending question for the last two or three minutes, right?

A. And I'm not answering.

Demchuk Depo. at 52:6-18, 64:22-65:4, 68:8-69:19. If Dr. Demchuk wished to speak with her attorney, she should have waited until there were no questions pending. By participating in these conferences, Dr. Demchuk's lawyer improperly interposed himself between the witness and the deposing attorney.

## III. DR. DEMCHUK'S LAWYER VIOLATED RULE 30(d)(1) BY INSTRUCTING OR INFLUENCING DR. DEMCHUK NOT TO ANSWER.

At one point, Dr. Demchuk's lawyer instructed Dr. Demchuk not to answer one of the Plaintiffs' questions. See id. at 68:19-69:6. Rule 30(d)(1) provides, however, that an attorney may

-8-

instruct a witness not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under rule 30(d)(4). None of these circumstances was present: Dr. Demchuk's lawyer based his instruction on the fact that Dr. Demchuk was not a "standard-of-care" witness, not to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under rule 30(d)(4).

Throughout the rest of the deposition, it is apparent that Dr. Demchuk's lawyer's repeated references to Dr. Demchuk's status as a non-expert witness encouraged Dr. Demchuk to obstruct the deposition by refusing, on her own, to answer questions on that ground. See id. at 73:24-74:16, 75:25-76:13, 87:4-12. For instance: "A. I'd like to be able to answer a question based on facts, rather than speculation and/or standard of care." Id. at 76:7-8. Later, Dr. Demchuk informed the parties: "I'm going to, again, not answer that, because of the issue of facts. I have to be able to respond to questioning regarding facts, rather than speculation and/or expert witness." Id. at 87:9-12. While Dr. Demchuk's counsel may raise concise, non-argumentative objections, Dr. Demchuk may not herself refuse to answer questions – outside of the three limited areas protected by rule 30(d)(1) – based on her own legal analysis. Just as a lawyer can not tell a doctor how to perform surgery in the operating room, a witness does not have the last word on the propriety of questions posed to her by opposing counsel. By encouraging such behavior, Dr. Demchuk's lawyer violated rule 30(d)(1)'s commands.

## IV. THE COURT WILL AWARD FEES AND COMPEL DEMCHUK TO ANSWER THE PLAINTIFFS' QUESTIONS.

Rule 30(d)(3) provides that "[i]f the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an

appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." The Court has reviewed the transcript and has determined that Dr. Demchuk's lawyer frustrated the Plaintiffs from receiving complete answers to two questions: (i) "Would you agree that if the aneurysm had grown 10 millimeters from August 25th to September 4th, that would be a very dangerous situation?"; and (ii) "And if the family had asked for admission, and you had said that it is not necessary, that would have been a violation of your training, right?" The Plaintiffs are entitled to more direct answers. The Court believes that the Plaintiffs received a complete and adequate answer to: (i) "And you knew that Mr. Cordova was not on a beta blocker?"; and (ii) "Knowing that Mr. Cordova was not on a beta blocker, why didn't you prescribe a beta blocker?"

Having determined that Dr. Demchuk's lawyer's conduct frustrated the fair examination of Dr. Demchuk, the Court must now determine the appropriate remedy. The Plaintiffs have, in large part, prevailed in convincing the Court of the correctness of their position. The Court will order Dr. Demchuk's lawyer to pay $1,000.00 to the Plaintiffs for the cost of bringing and arguing this motion, and for being substantially correct in their position. The Court will not, however, give the Plaintiffs' proposed jury instructions at trial, because doing so would shift too much of the burden of the rules' violations to the Heart Institute rather than to Dr. Demchuk and Dr. Demchuk's lawyer. The Court will leave it to Dr. Demchuk, Dr. Demchuk's lawyer, and perhaps others to decide who will actually pay this $1,000.00 to the Plaintiffs.

Furthermore, the Court will order Dr. Demchuk to answer, with direct answers, the following questions: (i) "Would you agree that if the aneurysm had grown 10 millimeters from August 25th to September 4th, that would be a very dangerous situation?"; and (ii) "And if the family had asked for admission, and you had said that it is not necessary, that would have been a violation of your training,

right?" The Court will overrule Dr. Demchuk's objection to these questions. Within the context of this case, given that Dr. Demchuk was a treating physician, even if the two questions may be getting into her expertise and professional knowledge, the questions are appropriate. The Court believes that her knowledge and training are appropriate areas for inquiry, and the Court will direct her to answer these questions. It was not that long ago that this judge was a lawyer taking and defending depositions similar to those at issue in this case. The Court understands such depositions and the danger that a lawyer often feels about his or her client answering questions like those posed here. But the Court also thinks that the questioning attorney was entitled, in this situation, to those answers. The Plaintiffs may ask limited, reasonable follow-up questions.

The Court also thinks that these were more than just objections to form and that many of the objections were not proper. Dr. Demchuk should have answered the questions. The Court is also concerned about some of the conferences while questions were pending; what would not be proper at trial is normally not proper at a deposition. Hence, the Court thinks that the motion is well taken on that score and that the $1,000.00 reimbursement for the cost of bringing this motion is appropriate.

The deposition will be at Dr. Demchuk's expense. Because Dr. Demchuk appears to have decided how she would appear for the deposition -- by video conference -- the Court will leave that decision to her this time as well. The Plaintiffs cannot insist that Dr. Demchuk must come to Albuquerque. If Dr. Demchuk wants to present herself in a particular manner, that is her choice, but it will be at her expense. If Dr. Demchuk wishes to come to Albuquerque, or if the parties cannot arrange again for video conferencing, she will need to bear her own costs in doing so. If Dr. Demchuk wishes to present herself by video conference again, she may do so and will be responsible

for all expenses associated with that format. If the deposition is arranged by video conferencing, all participants will have to bear their own expenses as they did earlier. And if Mr. David Shapiro, the Plaintiffs' counsel, wants to go out to New Jersey for those questions, he will need to pay his own expenses.

**IT IS ORDERED** that the Plaintiffs' Motion for Sanctions and to Compel Answer is granted in substantial part. The Court orders Mr. Lynn Sharp to pay the Plaintiffs $1,000.00 for the cost of bringing this motion. The Court orders Dr. Demchuk to answer the following questions: (i) "Would you agree that if the aneurysm had grown 10 millimeters from August 25th to September 4th, that would be a very dangerous situation?"; and (ii) "And if the family had asked for admission, and you had said that it is not necessary, that would have been a violation of your training, right?" The Plaintiffs may ask Dr. Demchuk limited, reasonable follow-up questions. The deposition will be at the Defendants' expense. The Court will not, however, give the Plaintiffs' proposed jury instructions at trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

William E. Snead
Albuquerque, New Mexico

-- and --

Daniel Shapiro
Kallie Dixon
Shapiro Bettinger Chase L.L.P.
Albuquerque, New Mexico

    *Attorneys for Plaintiff Alfonso Cordova, Sr. individually*
      *and as personal representative*

William C. Madison
Michael Dekleva
Madison Harbour & Mroz PA
Albuquerque, New Mexico

    *Attorneys for Defendant New Mexico Heart Institute, P.A.*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Elizabeth Martinez
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for Defendant United States of America*

Lynn Sharp
Charles P. List
Sharp & Bowles, P.A.
Albuquerque, New Mexico

    *Attorneys for Dr. Beverly Demchuk*