IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFONSO CORDOVA, SR., individually and as
personal representative of the estate of his
son, ALFONSO CORDOVA, JR.,
EUFELIA CORDOVA, DONNA CORDOVA,
ANNA MARIE CORDOVA, individually and as
next friend of her minor son, Joseph Alfonso Roybal,
GRACE CORDOVA, individually and as next friend
of her minor child Timothy Ray Cordova,
EMILY MARTINEZ, CLARIZA CORDOVA
and JULIA SALAZAR,

   Plaintiffs,

vs.                    No. CIV 05-563 JB/LFG

THE UNITED STATES OF AMERICA and
THE NEW MEXICO HEART INSTITUTE, P.A., a
New Mexico corporation,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Dismiss Without Prejudice, filed June 2, 2006 (Doc. 91). The Court held a hearing on this motion on July 18, 2006. The primary issue is whether the Court should exercise supplemental jurisdiction over the Plaintiffs' state claims now that the federal claims have been settled and dismissed. Because the values of judicial economy, convenience, fairness, and comity counsel in favor of dismissing this case, the Court will grant the motion.

## FACTUAL BACKGROUND

Plaintiff Alfonso Cordova, Sr. is a resident of Rio Arriba County. See Plaintiff's Memorandum in Support at 5, filed June 2, 2006 (Doc. 92). His son, the decedent, also grew up and

lived much of his life there. See id. Defendant New Mexico Heart Institute ("Heart Institute"), which has its principal place of business in Bernalillo County, has an office in Rio Arriba County. See Deposition of Sylvia Rodriguez at 5:1-6.

This case arises out of a claim for medical malpractice. See generally Complaint, filed May 23, 2005 (Doc. 1). Cordova Jr. was a patient at a federally funded clinic. See id. at ¶¶ 3, 5, at 1-2. The clinic staff examined Cordova Jr., noted the presence of a heart murmur, but failed to diagnose it as a diastolic heart murmur and failed to refer him to a cardiologist. See id. at ¶ 5, at 2.

Cordova Jr. was ultimately referred to a cardiologist at the Heart Institute who examined Cordova Jr. on August 25, 2003, and discovered that Cordova Jr. had an aneurysm of the ascending aorta. See id. at ¶ 6, at 2. Another doctor at the Heart Institute performed a cardiac catheterization on September 4, 2003, confirmed the presence of the aortic aneurysm, and observed that the aneurysm had rapidly enlarged in size. See id. at ¶ 7, at 2. Cordova Jr. died on or about September 8, 2003 of a ruptured aortic aneurysm, about a day before he was to see a cardiac surgeon at the Heart Institute. See id. at ¶ 8, at 2.

## PROCEDURAL BACKGROUND

Alfonso Cordova, Sr. filed suit in the District of New Mexico under the Federal Tort Claims Act against the United States, giving the Court supplemental subject matter jurisdiction over his claims against the Heart Institute under 28 U.S.C. § 1367(a). See Complaint ¶ 4, at 2. On May 11, 2006, Cordova and Defendant United States of America filed their Stipulation of Dismissal (Doc. 87), dismissing the action with prejudice as to the United States. The pretrial proceedings in this case have been limited to discovery and one motion related to deposition issues.

The Plaintiffs now move the Court to dismiss this case without prejudice pursuant to 28

U.S.C. § 1367(c)(3).  See Memorandum in Support of Motion to Dismiss at 1-2.  The Plaintiffs assert that all the federal claims against the United States, which were the only claims over which the Court had original jurisdiction, have been dismissed.  See id. at 2.  Plaintiff also asserts that the remaining claims against the Heart Institute concern only state law.  See id.  The Plaintiffs seek dismissal so that they may pursue their claims against the Heart Institute in what they perceive to be the sympathetic environs of Rio Arriba County.  See id. at 5.  The Heart Institute opposes this motion, contending that it arises out of Cordova, Sr.'s desire to pursue his claims with the considerable aid of "home court" advantage.  Response at 2, filed June 12, 2006 (Doc. 93).[1]

### LAW ON SUPPLEMENTAL JURISDICTION

28 U.S.C. § 1367(a) recognizes that, when a district court has original jurisdiction over a civil action, "it has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c).  A district court is "well within its discretion in declining supplemental jurisdiction over the remainder of" a case when it dismisses a plaintiff's federal claims.  Exum v. United States Olympic Comm., 389 F.3d 1130, 1139 (10th Cir. 2004).  When a federal claim no longer supports supplemental

---

[1] In its response, the Heart Institute stated that the action against the United States was not properly dismissed because the Heart Institute did not sign the Stipulation of Dismissal, requiring the Court to retain jurisdiction over this case because the Court still had original jurisdiction over the claims against the United States.  See Response at 8-9.  At the hearing, however, the Heart Institute agreed with the Court that the proper procedure for disposing of the motion to dismiss was to decide the issue of supplemental jurisdiction.  See Transcript of Hearing at 11:24-12:17 (taken July 18, 2006).  To the extent that there is any remaining issue about the United States' dismissal, the Court dismisses all claims against the United States with prejudice and drops the United States as a party to this case.

jurisdiction, the United States Court of Appeals for the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice, see Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995); the parties do not dispute this proposition, see Memorandum in Support of Motion to Dismiss at 2, Response at 3. "Section 1367 reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Gold v. Local 7 United Food & Commer. Workers Union, 159 F.3d 1307, 1310 (10th Cir. 1998)(citations and internal quotations omitted).

The Tenth Circuit has stated its "general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial. . . ." Board of County Commissioners v. Geringer, 297 F.3d 1108, 1115 n. 6 (10th Cir. 1998)(citations omitted). Jurisdiction may be retained where "substantial time and energy have been expended on the case prior to disposition of the federal claims." Jones v. Intermountain Power Project, 794 F.2d 546, 550 (10th Cir. 1986), reversed on other grounds by, Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820 (1990). It would be inefficient to exercise pendent jurisdiction where it would result in substantially duplicative proceedings in federal and state courts, such as where witnesses would be forced to testify twice to the same facts. See id. (citations omitted).

## ANALYSIS

All federal claims have been dismissed, and the United States is no longer a defendant. Under 28 U.S.C. § 1367(c)(3), the Court may now decline to exercise supplemental jurisdiction over the

remaining state law claim and dismiss the case without prejudice.  Both parties attempt to persuade the Court that each factor weighs in favor of dismissal or of retaining jurisdiction.

The Court has examined the relevant factors that courts have identified within the framework of this case.  The factors do not line up all one way.  More importantly, no compelling reason exists to stand in the way of the Plaintiff's efforts to pursue their claims in Rio Arriba County.  Weighing all relevant factors, there is no compelling reason which warrants the Court's exercise of supplemental jurisdiction or that strongly counsels that the Court should not dismiss the case without prejudice so that state claims may be pursued in state court.  Dismissal is warranted and appropriate.

## I.     DISMISSAL OF THE FEDERAL CASE IS NOT INCONSISTENT WITH JUDICIAL ECONOMY.

The Court has not been required to invest a substantial amount of time and energy in deciding issues in this case.  There does not appear to be any reason the discovery in this case will not be fully usable in a state case that would be filed if the court dismisses the lawsuit.  See Huntsinger v. Board of Directors, 35 Fed. Appx. 749, 760 (10th Cir. May 6, 2002)(citations omitted)("Although the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness may be relevant in deciding whether or not to exercise supplemental jurisdiction, nothing prevents the parties in this case from agreeing to utilize any discovery already obtained in any future state court proceeding." (internal quotations omitted)).[2]  Only one trial will occur regardless whether this case is dismissed.

While judicial economy slightly favors supplemental jurisdiction, the Court cannot say that

---

[2] The Tenth Circuit Rule 36.3(B) states: "Citation to an unpublished decision is disfavored. But an unpublished decision may be cited to if: (i) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (ii) it would assist the court in its disposition."  This unpublished decision meets both these criteria, and the rules therefore allow citation to this unpublished decision.

this factor rises to the level of a compelling factor. While the completion of discovery may provide some support for the Court's exercise of supplemental jurisdiction, it may also point the other way, too. Some delay would result from the dismissal of the case, as a new action would need to be filed. The substantial amount of discovery that has already been completed, however, will all be usable in the state case. Additionally, expert depositions could still proceed expeditiously, because the Plaintiffs have disclosed their experts and the Heart Institute will have disclosed its experts by the time the Court decides this motion.

Because of these factors, a state case would be able to move forward quickly, which should serve to mitigate the delay associated with dismissal. Aside from filing a new claim, there should be no repetitive efforts involved because of dismissal.

## II.     DISMISSAL OF THIS CASE WILL SERVE THE CONVENIENCE OF CORDOVA.

Trial would be more convenient for Cordova in Rio Arriba County. There is no question that out-of-state expert witnesses could testify more conveniently in Albuquerque than in Tierra Amarilla, but that is the price Cordova is willing to pay. Cf. Dawson v. Ielacqua, CIV 02-113 LFG/WWD, Memorandum Opinion and Order at 10 (D.N.M. October 2, 2004)("Convenience is not a factor, as Dawson, Chavez, and the state courts are all located in Albuquerque."). While overall it would probably be more convenient for all parties and witnesses to try the case in Albuquerque, the convenience factor is not a significant factor in the calculus whether to keep the case.

## III.    FAIRNESS COUNSELS THAT THE COURT DISMISS THE FEDERAL CASE.

Both parties agree that the overriding issue regarding fairness in this case is the venue in which the case would be tried. See Memorandum in Support of Motion to Dismiss at 4; Response at 3. Both parties agree, by their briefing, that fairness is an important factor for the court to evaluate

in deciding whether to exercise supplemental jurisdiction over the Plaintiff's state claims.

The Plaintiffs argue that fairness requires the Court to dismiss the federal case. The Plaintiffs perceive Rio Arriba County to be a more favorable venue than federal court: a northern New Mexico jury may better understand certain family and social issues than a jury drawn largely from the Albuquerque area. For example, Cordova Sr. was not truthful on a first set of interrogatories about his son's DWI record. The prejudicial impact of these issues is high should the Heart Institute try to introduce this evidence. According to the Plaintiffs, a Rio Arriba jury would ultimately be able to understand how a Rio Arriba father and son raised in Rio Arriba might have had such misfortunes, and tried to keep that information from the mother, better than jurors from another area of the state with different cultural heritages; also, a Rio Arriba jury would better understand the attitudes of a rural northern New Mexico family towards authority figures, like physicians, than jurors from different cultural backgrounds in this state. While somewhat unclear, it appears that the Plaintiffs are stating that citizens of Rio Arriba County treat and view these authority figures differently than other citizens and with at least some degree of mistrust. The Plaintiffs assert that this "understanding" will alleviate what he perceives as "overwhelming" prejudice resulting from the nondisclosure of Cordova Jr.'s DWIs. Memorandum in Support of Motion to Dismiss at 4-6.

The Plaintiff's arguments in their motion to dismiss -- that a jury pool in Rio Arriba County shares a cultural heritage with them that runs deep and strong -- concerns the Heart Institute whether it can receive a fair trial in Rio Arriba County. Of all the possible relevant factors, the Heart Institute particularly stresses fairness. The Heart Institute responds to the Plaintiffs' arguments by stating that "asking the Court to believe [it] can get a fair trial in Rio Arriba County against Plaintiff is akin to pointing to a wolf in sheep's clothing and asking this Court to believe it is a lamb." Response at 2.

The Heart Institute contends that preservation of its right to a fair trial is the compelling reason that underlies and justifies a federal court's power to exercise discretion, and to retain jurisdiction over state claims. The Heart Institute contends that the Supreme Court of New Mexico has noted its concern about the inability of a non-resident to receive a fair trial in another New Mexico County with similar demographics to Rio Arriba. See Response at 5 & n.2; Southern Pac. Transp. Co. v. Frost, 102 N.M. 369, 695 P.2d 1318 (N.M. 1985). The Heart Institute admits that time constraints on the filing of this response are prohibitive of the kind of research conducted in Southern Pac. Transp. Co. v. Frost that revealed jury bias to outsiders in San Miguel County. The Heart Institute is confident, however, that any member of the bar who has practiced in this state for a reasonable length of time can attest to the existence of similar hurdles to fairness an outside defendant faces in litigating against a Rio Arriba County resident in Tierra Amarillo. See Response at 5 n.3.

Experienced, seasoned, and able advocates represent both parties. The Court is reluctant to characterize either side's demonstration of need for a fair venue as inaccurate. But the Plaintiffs' argument is flawed on several levels. First, as has become common and public knowledge, drunk driving is a serious problem which has infected many counties and corners of New Mexico. The Court is reluctant to accept the Plaintiffs' invitation to find, without considerable more factual and logical support, that the cultural heritage that Rio Arriba residents share somehow makes them more understanding than other New Mexicans of how a person might accumulate multiple DWI arrests and subsequently want to hide them from his family. Second, it is the Court, not the jury, which acts as the gatekeeper for evidence that might be unfairly prejudicial. If the Heart Institute were to introduce evidence bearing on the lack of Cordova Sr.'s credibility, and if Cordova Sr. were to object on the ground of overwhelming prejudice, then the issue is a matter of law for the court, not for the jury,

to address by applying a balancing test under rule 403 of the Federal Rules of Evidence.

Third, the Court is concerned that it is not so much "understanding" that Cordova, Sr. seeks from his fellow Rio Arriba County residents as it is favoritism. Both parties' arguments are in support of their thinly disguised efforts to tilt the playing field. There is nothing improper about their requests, but the parties are forum shopping. The Court is not blind to the importance to New Mexico litigants and lawyers about where their cases are litigated. In the end, however, whether a Rio Arriba jury is sympathetic to the misfortunes of Cordova, Sr. is irrelevant to an unfair prejudice analysis that the Court must undertake.

Likewise, the Court is reluctant to accept the Heart Institute's invitation to find that the Cordova family's residence is a culturally insular community that bears on the ability of a non-resident such as the defendant to receive a fair shake from them. While the Court is mindful of the likely impact of dismissal, it does not think that it necessarily promotes or eliminates fairness for either party. The Court is extremely hesitant to get drawn into the Heart Institute's argument that Cordova is "one of them" and that it is an "authority figure" and an outsider.

While strategic, their requests are not rooted in fairness so much as advantage. The parties do not seek fairness or unfairness so much as an advantage. Fairness, by definition, implies the application of justice and impartiality, and implies a level playing field. The Court is confident that both parties could and would receive a fair trial if the Court were to exercise supplemental jurisdiction. But that conclusion does not inevitably lead to the conclusion that the Court should keep this case.

The Heart Institute contends that whether it has an office in Rio Arriba is immaterial to anything other than jurisdiction and that jurisdiction is not in issue. See Response at 5. The Court

is not convinced that the Heart Institute's business presence in Rio Arriba County is immaterial. While the Heart Institute contends that it is a resident of Rio Arriba County in procedural name only, the issue is whether it will be unfair for the Heart Institute to litigate in the same county where it does business. While it is true that the Heart Institute may not be afforded any of the empathy, sympathy, or "understanding" of which Cordova, Sr. seeks to avail himself, it is not unfair for the Heart Institute to face a jury from Rio Arriba. The Heart Institute has chosen to be present there and to treat Rio Arriba residents. It is not inequitable to require the Heart Institute to defend itself in the court there. The Court cannot say that the only way both parties will receive the benefit of fairness in this case will be for this Court to retain jurisdiction.

The Court must balance a brief delay in the case moving forward against the fairness to Cordova, Sr. of trying the case. The Court cannot say that fairness will not be served by dismissal of the federal case. For these reasons, the Court will exercise its discretion and dismiss the case without prejudice.

## IV.     ISSUES OF COMITY OUTWEIGH FACTORS IN FAVOR OF SUPPLEMENTAL JURISDICTION.

Finally, the Plaintiffs ask the Court to rely on notions of comity and federalism to decide that dismissal is warranted, and to exercise its discretion to do so. The notion of comity counsels that the Court should dismiss this case so that state courts can address the issues of evolving state law. See DeVolk v. Board of Regents of the University of New Mexico, CIV 01-0774 PK/JHG, Memorandum Opinion and Order at 3-4 (D.N.M. May 17, 2002)(noting that the New Mexico courts ought to resolve questions about the applicability of the New Mexico Tort Claims Act, even when federal claims remained in suit); 28 U.S.C. § 1367(c)(1)(authorizing district courts to decline supplemental

jurisdiction over a state law claim if "the claim raises a novel or complex issue of State law"). Although the Plaintiffs believe the facts of this case invoke concurrent tortfeasor doctrines, they are concerned that the Heart Institute will argue that the facts of the case suggest that successive tortfeasor doctrines protect them from full liability for Cordova, Jr.'s injuries and death. See Memorandum in Support of Motion to Dismiss at 6.

The Plaintiffs suggest that the Tenth Circuit's interpretation of New Mexico law on concurrent and successive tortfeasor law may be an incorrect one. See id. at 7. The Plaintiffs further suggest that, because the Tenth Circuit may not have demonstrated a clear understanding of the state law at issue, the Court should permit him to have the state courts hear these issues. See id. at 7-8.

Federal courts should be hesitant to flesh out the concepts associated with successive and concurrent tortfeasors where state judges have admitted that the ground is shaky. It appears that this area of state law is so complex that even a reviewing New Mexico court can encounter problems in its application. Because this issue is likely to arise in this case, the Court has a compelling reason to dismiss the claims so that the state court can address them. That a case was recently decided by the Supreme Court of New Mexico suggests that the law in this area has at least recently been in flux. See id. at 8 & n.1. While the Supreme Court's opinion may have clarified some issues, there are no compelling reasons in this case why the Court should not dismiss the case so that the Plaintiffs may pursue the state claims in state court and let the state courts decide how clear state law is.

**IT IS ORDERED** that the Motion to Dismiss Without Prejudice is granted.

                                                              _____
                                                              UNITED STATES DISTRICT JUDGE

*Counsel*:

Daniel Shapiro
Kallie Dixon
Shapiro Bettinger Chase L.L.P.
Albuquerque, New Mexico

– and –

William E. Snead
Law Office of William E. Snead
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Elizabeth M. Martinez
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorney for Defendant United States*
        *of America*

William C. Madison
Michael J. Dekleva
Rebecca Shaw Kenny
Shawn McAfee
Julie Fritch
Madison, Harbour & Mroz, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant New Mexico*
        *Heart Institute, P.A.*